IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRIAN L. SIVERTSON,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>HEARTFLOW, INC., a Delaware Corporation,<br><br>　　　　　　Defendant. | **8:21CV112**<br><br>**MEMORANDUM AND ORDER** |

## I.　　INTRODUCTION

The plaintiff, Brian L. Sivertson, claims his former employer, Heartflow Inc., discriminated against him based on his sex under Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e *et seq.*, and the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. § 48-1101 *et seq.*, and discriminated against him based on his age under the Age Discrimination in Employment Act of 1967 (as amended), 29 U.S.C. § 621 *et seq.*, and the Nebraska Age Discrimination in Employment Act, Neb. Rev. Stat. § 48-1001 *et seq.* Heartflow moves for summary judgment on all of Sivertson's claims. Filing No. 41. Heartflow also moves to strike one of the exhibits Sivertson submitted in opposition to its summary judgment. Filing No. 55. For the reasons stated herein, the Court denies the motion to strike and grants Heartflow's motion for summary judgment.

## II.　　BACKGROUND

Sivertson began working for Heartflow in 2017. Filing No. 43-1 at 25. He started as a Clinical Account Manager and then became a Business Development Manager ("BDM") on or around November 7, 2017. *Id.* at 29. As a BDM, Sivertson was responsible for carrying out sales and marketing to customers in Minnesota, North Dakota, South

1

Dakota, Nebraska, Iowa, and Oklahoma. *Id.* at 31–32. Sivertson worked under a District Sales Manager, Scott Burger, for most of the territories, *id.* at 31, except for the territory of Oklahoma, where he worked under a different manager. *Id.* at 32.

Toward the end of 2018 and the beginning of 2019, Heartflow engaged in a restructuring. Filing No. 43-6 at 1. At the time, Andy Wallman was the Director of Commercial Operations and was engaged in the restructuring. *Id.* Heartflow contended it wanted to focus its remaining sales resources on the customers with the most growth potential. *Id.* at 1–2. Sivertson argues his geographic territory remained strategically important for Heartflow even at the time of the restructuring. Filing No. 50 at 5. Wallman analyzed which districts should have both a District Sales Manager and a BDM, and which districts could not support both. Filing No. 43-6 at 2. Wallman's analysis indicted that the territory in which Burger was District Sales Manager and Sivertson was BDM had the least growth potential. *Id.* Therefore, Wallman recommended to an executive named Mike Buck the elimination of Sivertson's BDM position in Burger's territory. *Id.* Buck accepted this recommendation and terminated Sivertson's position effective January 22, 2019. Filing No. 51-1 at 1, 11. Sivertson's was the only territory to not continue a BDM position, *id.* at 11, but all other BDM positions were eventually transitioned into the title of Strategic Account Manager ("SAM"). Filing No. 43-6 at 3. The parties dispute whether this transition from BDMs to SAMs occurred simultaneously with Sivertson's termination or after he had been fired. *Id.*; Filing No. 50 at 2. Heartflow never replaced Sivertson's former BDM position with a SAM position or any other new position. Filing No. 43-6 at 4.

Heartflow explained to Sivertson that the termination of his employment was not performance-based, and he was eligible for rehire. Filing No. 43-1 at 59–60. Sivertson

thereafter applied for an open SAM position in San Francisco, California. Filing No. 43-2 at 23. Heartflow ultimately decided to hire another male applicant named Anthony Campanile instead of Sivertson for the California SAM position. Id. The Heartflow executive who hired him testified he believed Campanile was more qualified than Sivertson for the role. Id. Sivertson did not apply for any other positions at Heartflow. Filing No. 43-1 at 87–88, Filing No. 50 at 4. Sivertson was over the age of 40 and male during the time of his employment and termination. Filing No. 1 at 3; Filing No. 43 at 23.

Sivertson admits that Buck never made direct comments about his sex or age. Filing No. 43-1 at 78. Rather, he alleges Buck favored younger, female employees. Filing No. 1 at 3. He points to three female employees, Colleen Kestner, Rajah Brazda, and Michelle Cabrera, who were retained and later promoted around the time he was fired as proof of sex and age discrimination. Filing No. 43-1 at 82–83, 90. Kestner and Brazda were both BDMs who were later promoted to Implementation Managers with Heartflow. Filing No. 43-12 at 1–2. Cabrera was a senior BDM who was the only female to be promoted to SAM. Filing No. 43-1 at 90. Sivertson contends that Buck was later terminated by Heartflow for his inconsistent management style, playing favorites with women, and bullying. Filing No. 43-2 at 20.

Sivertson takes issue with one particular meeting in which he claims Buck discriminated against him. Filing No. 43-1 at 67; Filing No. 43-5 at 2–3. The meeting occurred on November 13, 2018, with the purported purpose of identifying best practices and successes for BDMs to help Heartflow grow in the upcoming year. Filing No. 43-5 at 2. However, during the nearly 14-hour meeting, Buck personally attacked Sivertson for spending too little time traveling and tending to incorrect accounts. Id. Sivertson

described Buck as "intimidating, hostile, and harassing" during the meeting. *Id.* Buck was not as critical of Cabrera and Kestner during this meeting. Filing No. 43-2 at 11.

Sivertson filed charges of sex and age discrimination with the Equal Employment Opportunity Commission and Nebraska Equal Opportunity Commission. Filing No. 1 at 3. He received Notice of Right to Sue from the EEOC on December 22, 2020, dated December 18, 2020, and commenced this lawsuit shortly thereafter. *Id.* at 3–4. Heartflow now moves for summary judgment on all claims. Filing No. 41.

### III. ANALYSIS

#### A. Standard of Review

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "an adverse party cannot produce admissible evidence to support" a fact essential to the nonmoving party's claim. Fed. R. Civ. P. 56(c)(1)(A) & (B). The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of*

*Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson*, 477 U.S. at 251.

B. **Sex Discrimination**

Heartflow moves for summary judgment on Sivertson's claims of federal and state sex discrimination. Sivertson claims Heartflow discriminated against him on the basis of his being male when it terminated his position and when it did not hire him for a different position to which he applied. Heartflow argues Sivertson's position was terminated as a result of a reduction in force, not based on his sex, and that it hired another male for the position to which Sivertson later applied because that man was more qualified than Sivertson. The Court finds Heartflow is entitled to summary judgment on Siverton's sex discrimination claims.

According to Title VII, "it is unlawful for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To survive a motion for summary judgment under Title VII, Sivertson must show that he: (1) is a member of a protected class (here, sex); (2) was meeting his employer's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of his protected class. *Rebouche v. Deere & Co.*, 786 F.3d 1083, 1087 (8th Cir. 2015) (quoting *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013)). Sivertson must show either direct evidence of a Title VII violation or create an inference of discrimination under the burden-shifting framework set forth by the United States Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *See Fiero v CSG Sys. Inc.*, 759 F.3d 874, 878 (8th Cir. 2014). Under the *McDonnell Douglas* framework, the fourth prong can be met by showing other circumstances that give rise to an inference of discrimination. *Allen v. Interior Constr. Servs., Ltd.*, 214 F.3d 978, 980 (8th Cir. 2000). The NFEPA prohibiting sex discrimination under Nebraska state law is patterned after Title VII, and courts employ the same analysis in addressing both claims. *See Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005).

Heartflow does not dispute that Sivertson meets the first three prongs of a sex-discrimination claim: he was a member of a protected class based on his sex (male), he was meeting Heartflow's legitimate job expectations, and he suffered an adverse employment action. As to the fourth prong, however, the undisputed evidence does not

6

show that he was treated differently from similarly situated female employees or that there were other circumstances giving rise to an inference of discrimination on the basis of sex.

First, Sivertson points to his termination as evidence of sex discrimination. He argues that Heartflow retained female employees who were similarly situated to him, namely Michelle Cabrera, Colleen Kestner, and Rajah Brazda. However, as to Cabrera, the evidence shows she was not similarly situated to Sivertson prior to his termination; Sivertson was a BDM while Cabrera was a senior BDM. Filing No. 43-1 at 90. As Sivertson's immediate supervisor explained, a senior BDM had different responsibilities from a BDM and received a different base salary. Filing No. 43-2 at 12. Kestner and Brazda were BDMs who were retained when Sivertson was fired, but there is still a dearth of evidence by which the Court can conclude they were similarly situated to Sivertson. Importantly, Sivertson adduces no evidence of their salaries or bonuses, job responsibilities, or other information to demonstrate how they were situated in comparison to Sivertson himself. Importantly, the evidence does show that Sivertson, Kestner, and Brazda worked in geographically disparate regions of the company, and that their respective locations had an impact on the available markets and customer responsibilities for each BDM. Filing No. 43-3.

Second, Sivertson claims Heartflow discriminated against him when it failed to hire him for the open SAM position to which he applied following his termination. However, the undisputed evidence shows that Heartflow hired a male individual, Anthony Campanile, for that position. Therefore, Sivertson's cannot show that a similarly situated non-class member (aka non-male) was treated differently than he was, and his claim must fail in this regard.

7

Sivertson focuses heavily on the November 13, 2018, meeting in which he was mistreated by Mike Buck as purported evidence of sex discrimination. Construing the evidence in Sivertson's favor as the Court must do, it is apparent that Buck's treatment of Sivertson at that meeting was overly harsh and unprofessional. However, workplace criticism is not an adverse employment action. *See LaCroix v. Sears, Roebuck, & Co., 240 F.3d 688, 693 (8th Cir. 2001)* (negative performance review did not constitute adverse employment action). Thus, even taking as true Sivertson's assertion that Buck was less critical towards female employees at the meeting, this isolated incident does not demonstrate Sivertson's contention that his termination or the failure to rehire him (the adverse employment actions he suffered) were the result of sex discrimination.

Given the lack of similarly situated employees in the record, the Court cannot conclude Sivertson has made out a prima facie case of sex-based discrimination under Title VII or the NFEPA. Heartflow is entitled to summary judgment on Sivertson's sex discrimination claims.

C. **Age Discrimination**

Heartflow also moves for summary judgment on Sivertson's claims of federal and state age discrimination. Sivertson claims Heartflow discriminated against him on the basis of his age when it terminated his position. Heartflow argues Sivertson's position was terminated as a result of a reduction in force, not based on his age. The Court finds Heartflow is entitled to summary judgment on Siverton's age discrimination claims.

The ADEA protects individuals over forty and prohibits an employer from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's age." 29 U.S.C. § 623(a). Under the *McDonnell Douglas* framework, a plaintiff may establish a prima facie case of age discrimination with a showing that (1) he is over forty; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) similarly-situated employees outside the class were treated more favorably. *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 523 (8th Cir.2010). Because the Nebraska ADEA is patterned after the federal ADEA, courts look to federal law in analyzing Nebraska ADEA claims. *See Blake v. MJ Optical, Inc.*, 870 F.3d 820, 827 (8th Cir. 2017).

The parties do not dispute that Sivertson was over forty, was qualified for his job, and suffered an adverse employment action when his position was terminated. However, the undisputed evidence shows Sivertson cannot meet the fourth prong to demonstrate age discrimination. Sivertson vaguely claims that he was fired while the company retained "younger" females, but there is no evidence in the record of Kestner's, Cabrera's, or any other employee's age. Sivertson's speculation that the employees retained may have been younger than he and/or younger than forty is, without more, insufficient to create a dispute of material fact. Heartflow is entitled to summary judgment on Sivertson's claims of age discrimination.

### D. Motion to Strike

In opposition to Heartflow's motion for summary judgment, Sivertson submitted, inter alia, an affidavit from Scott Burger, the former manager under whom Sivertson worked in the Midwest region. Filing No. 51-2 at 1–3. In the affidavit, Burger claims that the elimination of Sivertson's position was a poor strategic decision and that Buck promoted Kestner and Cabrera over Sivertson based on favoritism rather than their

9

qualifications. Filing No. 51-2 at 2–3. Throughout the affidavit, Burger makes statements such as "[m]y understanding was" and "I became aware" without elaboration on where such knowledge came from. Filing No. 51-2 at 2–3. Heartflow moves to strike various portions of Burger's affidavit because it claims they are not based on Burger's personal knowledge, are conclusory, and are without factual support. Filing No. 55.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A declaration which does not satisfy these requirements may be stricken or disregarded. *Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 758 (8th Cir. 2015) (citing *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972)).

Heartflow argues the Court should strike certain portions of Burger's affidavit because they lack foundation and are not made on personal knowledge. However, even taking into account the contested portions of the affidavit, the outcome would remain the same; none of the information in Burger's affidavit indicates Cabrera and Kestner were similarly situated to Sivertson (in fact, it confirms Cabrera was a senior BDM rather than a regular BDM, Filing No. 51-2 at 1) nor does it have anything to say about their ages. Importantly, while Burger states his belief that Buck "show[ed] favoritism toward younger female employees," Filing No. 51-2 at 2, such beliefs—whether made on personal knowledge or not—merely echo the same opinion already contained in Sivertson's deposition and do not create any disputes of material fact which would preclude the Court's grant of summary judgment for the reasons set forth above. Therefore, the motion to strike is denied as moot.

## IV.     CONCLUSION

For the foregoing reasons, Heartflow is entitled to summary judgment on Sivertson's claims of federal and state sex and age discrimination.

IT IS ORDERED:

1. Defendant's Motion to Strike, Filing No. 55, is denied;

2. Defendant's Motion for Summary Judgment, Filing No. 41, is granted in full; and

3. The Court will enter a separate judgment.

Dated this 17th day of January, 2023.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge
